Judge Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>     v.<br><br>SHARON D. KUKHAHN,<br><br>             Defendant. | No. CR10-5221BHS<br><br>GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, Arlen R. Storm, Assistant United States Attorney for said District, and Michael J. Romano, Trial Attorney, Tax Division, hereby submits its Supplemental Sentencing Memorandum in the above-entitled case.

During the sentencing hearing scheduled in this case for November 14, 2011, the Court requested that the parties provide additional briefing regarding their tax loss calculations. Below, the government addresses that issue, as well as various other issues raised by Sharon Kukhahn in her Sentencing Memorandum.

I. Facts

In her Sentencing Memorandum, Sharon Kukhahn makes 17 objections relating to various paragraphs of the Presentence Report ("PSR"). When a defendant challenges the factual accuracy of presentence material, the district court must either state for the record that the controverted matters will not be considered for sentencing purposes, or make written

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

finding of fact concerning the contested matters prior to sentencing. Fed.R.Crim.P. 32(i)(3)(B). A statement demonstrating the district court's non-reliance on the controverted information precludes the requirement that written finding of fact be made regarding the contested material. *United States v. Gonzales*, 765 F.2d 1393, 1397 (9th Cir. 1986).[1]

In the present case, it appears that Kukhahn's primary objective is to add information to the Presentence Report, rather than objecting to the accuracy of the information already contained in it. It does not appear to the government, moreover, that the objections she makes are pertinent to issues before the Court at sentencing. Accordingly, it is the government's recommendation that pursuant to Fed.R.Crim.P. 32(i)(3)(B), the Court make a finding that it will not rely on controverted information for the purposes of sentencing.[2] *See Gonzales*, 765 F.2d at 1397.

## II. Guideline Calculations

In her Sentencing Memorandum, Kukhahn objects to the guideline calculations contained in the PSR as well as in the government's Sentencing Memorandum. In order to address these objections, the government first discusses the calculations underlying the total offense level it recommends.

### A. Government's Guideline Calculations

The government calculates Sharon Kukhahn's total offense level at 35. This calculation is based on the following:

| | | |
|---|---|---|
| a. | Base offense level pursuant to USSG §§ 2T1.9; 2T1.4; and 2T4.1(K) | 26 |
| b. | Enhancement pursuant to USSG § 2T1.4(b)(1) because defendant derived a substantial portion of income from scheme (see PSR ¶ 40.a.) | + 2 |

---

[1] In addition, the Court must append a copy of the Court's determinations made under Fed.R.Crim.P. 32(i)(3) to any copy of the Presentence Report made available to the Bureau of Prisons. Fed.R.Crim.P. 32(i)(3)(C).

[2] To the extent that Kukhahn denies that she acted wilfully and with criminal intent - see her objections to PSR ¶¶ 10, 17, and 31 - the government notes that this issue has been decided by the jury.

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

| | | | |
|---|---|---|---|
| | c. | Enhancement pursuant to USSG § 2T1.4(b)(2) because the offense involved sophisticated means (see PSR ¶ 40.b.) | + 2 |
| | d. | Enhancement pursuant to USSG § 3B1.1(b) because the defendant was an organizer, leader, manager or supervisor in the charged offense (see PSR ¶ 42) | +3 |
| | e. | Enhancement pursuant to USSG § 3C1.1 for obstruction of justice (see PSR ¶ 44) | +2 |
| | | Total offense level: | 35 |

In assessing a base offense level of 26, the government has added the tax loss caused by each scheme for which Kukhahn was charged in the Indictment: (1) $482,331 caused by Kukhahn's promotion of David Stephenson's fraudulent trusts, as charged in Count 1 of the Indictment (see PSR ¶ 32); (2) $856,681 caused by Kukhahn's use of fraudulent trusts to evade her personal income taxes, as charged in Counts 2-5 of the Indictment (see PSR ¶ 30); and (3) $14,244,245 caused by Kukhahn's operation of a fraudulent and obstructive decoding and letter writing business, as charged in Count 6 of the Indictment (see PSR ¶ 31).

In reaching the tax loss of $14,244,245 for Count 6 (Kukhahn's operation of a fraudulent and obstructive decoding and letter writing business), moreover, the government added two figures, $9,744,236, representing clients' taxes which were due and owing at the time they sought Kukhahn's assistance, and $4,500,009, representing the taxes which were assessed to Kukhahn's clients after they sought Kukhahn's assistance (see PSR ¶ 31).

The government notes that its recommended tax loss of $14,244,245, is substantially lower than the $117,000,000 tax loss recommended by the PSR (see PSR ¶¶ 34, 40). This is because the PSR has used an extrapolated tax loss, that is, it has taken the average known tax loss for those purchasers who have been audited and multiplied that figure by the total number of known purchasers.

While the government acknowledges that the Ninth Circuit has approved extrapolation as a means of calculating total loss from a known smaller loss figure, see *United States v. Scrivener*, 189 F.3d 1365, 1368 (9th Cir. 1999) (extrapolating wire fraud loss), in order to avoid sentencing disparity, the government does not seek to apply an extrapolated tax loss in

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

this case. The government notes that in sentencing David Stephenson, one of Kukhahn's coconspirators, Judge Leighton applied the known tax loss of $8,500,000, instead of the extrapolated tax loss of $26,000,000.

B.  Contested Guideline Issues

*Tax Loss*

In calculating her tax loss, Kukhahn objects to the inclusion of $9,744,236, representing clients' taxes which were due and owing at the time they sought Kukhahn's assistance. The government disagrees with Kukhahn's objection.

Count 6 of the Indictment charges Kukhahn with Corruptly Interfering with the Internal Revenue Laws, in violation of 26 U.S.C. § 7212(a). While the government did not find case law discussing whether tax loss may include taxes due and owing before a client approaches a promoter, the government notes that under the guidelines, the tax loss attributable to a defendant involved in advising tax fraud is "the tax loss, as defined in [USSG] § 2T1.1, resulting from defendant's aid, assistance, procurance or advice." USSG § 2T1.4(a). *See also* USSG Appendix A (Statutory Index) (providing for the application of USSG § 2T1.1 where one is convicted of 26 U.S.C. § 7212(a)). USSG § 2T1.1, in turn, provides that "[i]f the offense involved tax evasion . . . , the tax loss is the total amount of loss that was the object of the offense," USSG § 2T1.1(c)(1), and "[i]f the offense involved willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay." USSG § 2T1.1(c)(3).

In the present case, the Indictment alleges that where taxes previously had been assessed against potential clients, Kukhahn assisted them in continuing to evade those taxes. At paragraph 48 of Count 6, the Indictment specifically alleges:

> In an attempt to intimidate IRS employees with the thickness and legal complexity of her clients' files and thereby diminish the likelihood that the IRS would pursue collection actions or pursue audits involving her clients, in addition to purporting to decode IMFs on behalf of clients, *SHARON D. KUKHAHN also promoted a frivolous letter-writing service for clients against whom collection actions already had been initiated or who already were being audited by the IRS*. (emphasis added)

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

Under these circumstances, nothing in the guidelines suggests that it is pertinent that the taxes were assessed before the clients sought Kukhahn's assistance. Accordingly, the tax loss is the total of the taxes she helped clients evade. USSG § 2T1.1.

*Leadership Enhancement*

Kukhahn also objects to the application of a three-point enhancement pursuant to USSG § 3B1.1(b) for being a "manager or supervisor" of a criminal activity that either "involved five or more participants" or was "otherwise extensive" (see PSR ¶ 42). Kukhahn proposes that, instead, the Court should apply a two-point enhancement pursuant to USSG § 3B1.1(c) for being an "organizer, leader, manager, or supervisor" in a criminal activity that did not involve "five or more participants" or was not "otherwise extensive." The government agrees with the three-point enhancement recommended by the PSR.[3]

In order to apply a three-point enhancement for operating a criminal activity that involved "five or more participants" pursuant to USSG § 3B1.1(b), the defendant's followers must share criminal culpability. *See* USSG § 3B1.1, application note 1. In this case, the government does not believe that it offered evidence at trial that five of Kukhahn's employees were criminally culpable, that is, had the requisite intent to defraud - and the government does not seek to offer such evidence at sentencing.[4]

Nevertheless, the evidence at trial did establish that the criminal enterprise that Kukhahn operated was "otherwise extensive." In *United States v. Peterson*, 20 F.3d 367 (9th Cir. 1994), the Ninth Circuit upheld the district court's finding that a fraud scheme involving a $3 million loss, sixty knowing or unwitting employees, a considerable number of bank employees and other outsiders, and scores of duped investors amounted to "otherwise extensive" conduct. The Court in *Peterson* noted:

---

[3] The government must show by a preponderance of the evidence that the defendant merits an aggravating role adjustment. *See United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996).

[4] The trial testimony established, by a preponderance of the evidence, only that three of Kukhahn's employees, Sarah Kukhahn, Paula Holmes and Dan Shaw, were criminally culpable, that is, they possessed the requisite criminal intent to defraud the IRS.

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

>     Whether criminal activity is "otherwise extensive" depends on such factors as (i) the number of knowing participants and unwitting outsiders; *United States v. Mullins*, 992 F.2d 1472, 1479 (9th Cir. 1993) (affirming four-level upward adjustment where defendant enlisted the help of at least three participants and many innocent outsiders) (ii) the number of victims; *United States v. Stouffer*, 986 F.2d 916, 927 (5th Cir. 1993) (finding not clearly erroneous the district court's finding that activity involving over 2,000 investors and $11 million in fraudulently obtained funds was "otherwise extensive") and (iii) the amount of money fraudulently obtained, *United States v. Allibhai*, 939 F.2d 244, 252-53 (5th Cir. 1991), *cert. denied*, 502 U.S. 1072 (upholding finding of leadership role in money laundering scheme involving one million dollars and, in addition to four participants, the "unknowing service of many outsiders").

*Peterson*, 20 F.3d at 373. In the present case, Kukhahn promoted her scheme throughout the United States for six years; sold it to in excess of 1,400 individuals from whom she collected in excess of $3,000,000; and supervised between five and ten employees in doing so. This conduct was extensive. Accordingly, the PSR has appropriately applied a three-point leadership enhancement. *See United States v. Govan,* 152 F.3d 1088, 1096 (9th Cir.1998) (finding that a conspiracy was clearly "otherwise extensive" because it involved interstate travel, a large number of victims, and nearly $100,000 in robbery proceeds).

   C. Guideline Ranges Taking into Account the Parities' Postions

The PSR calculates Kukhahn's total offense level at 41, her criminal history category at I, and her resulting applicable guideline range at 324 to 405 months' imprisonment. As noted above, the government calculates Kukhahn's total offense level at 35, her criminal history category at I, and her resulting applicable guideline range at 168 to 210 months' imprisonment. Finally, Kukhahn calculates her total offense level at 32 (based on a tax loss of approximately $5,000,000 and a two-point leadership enhancement - she does not object to the remaining PSR enhancements), her criminal history category at I, and her resulting applicable guideline range at 121 to 151 months' imprisonment.

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

III.  <u>Sentencing Recommendation</u>

For the reasons set forth in the government's Sentencing Memorandum,[5] and in the PSR, regardless of which the above guideline ranges is applied above, the government recommends a sentence of 96 months' imprisonment.  The government also seeks restitution in the amount of $856,681, the amount that Kukhahan personally evaded in paying on her income taxes between 2003 and 2006, as charged in Counts 2-5 of the Indictment.

The government notes that the attachments to Kukahn's Sentencing Memorandum do not change the government's sentencing recommendation.  To the contrary, in her written statement to the Court, Kukhahn does not accept responsibility for her conduct, stating that "it was never my intent to violate any of the laws of this great country."  The government notes moreover, that two of the attached letters of support are from individuals who worked for Kukhahn, her daughter Sarah Kukahn and Paula Holmes,[6] and one is from an individual who redacted his or her name.

Finally, the government believes that the 96-month recommendation of the PSR and government - which is 25 months below the low end of Kukhahn's own guideline range calculation - amply takes into account the facts and findings set out in Dr. Schau's report.  This is not to say that the government agrees with all of the assertions therein, however.[7]  For

---

[5] The government notes that at page 7 of its Sentencing Memorandum, it stated that Kukhahn's tax loss was "two and one half times greater than Stephenson's."  Based on a tax loss of $14,000,000, however, it should have stated that Kukhahn's tax loss was "one and one-half times greater than Stephenson's."  Stephenson's tax loss was $8,500,000.

[6] As noted above in footnote 4, the trial testimony established by a preponderance of the evidence that Sarah Kukhahn and Paula Holmes were criminally culpable.

[7] The government notes that Dr. Schau is the author of *Green River, Red Sea*, a book in which he profiled the "Green River Killer," before Gary Ridgway was identified and apprehended.  Below is just one of many controversial passages in that book, which can be found on the internet:

Putting aside for now the obscure symbolism, how could the police have missed the meaning in the few obvious symbols placed before them, such as the dead fish draped across Carol Christensen's throat? One response is that the police were simply ignorant when it came to deciphering anything religious in this case – or perhaps in all cases. A more sympathetic answer is that the religious symbols were not recognized because they were so out of context. Authentic religious symbols were not merely altered, undergoing some slight psychological twist. The placement of the symbols went far beyond the community's understanding of their proper home.

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

1  example, while Dr. Schau asserts that Kukhahn acted as she did because she was easily
2  influenced by men, the government notes that Kukhahn was involved in tax defying activities
3  *before* buying trusts form and subsequently becoming romantically involved with Stephenson.
4  The government notes, moreover, that Kukhahn was not in the least bit deferential to
5  Mr. Romano during his cross examination of her.[8]

DATED this 15th day of November, 2011.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

*/s/Arlen R. Storm*
ARLEN R. STORM
Assistant United States Attorney
U.S. Attorney's Office
WSBA #17330
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3800
Facsimile: (253) 428-3826
E-mail: Arlen.Storm@usdoj.gov

*/s/ Michael J. Romano*
MICHAEL J. ROMANO
Trial Attorney
Department of Justice
601 "D" Street N.W., Room 7029
Washington, D.C. 20004
Telephone: (202) 616-3856
Facsimile: (202) 514-9623
E-mail: Michael.Romano@usdoj.gov

---

[8]In addition, at the bottom of page 8, Dr. Schau asserts that "The effect of her punishment thus far is that it is unlikely that Sharon will engage in the kinds of acts that brought her to the attention of the government." Given Kukhahn's continued denial of responsibility - found throughout the defense pleadings and in Dr. Schau's report - and her extraordinary history of denying authority, the government finds this assertion, in particular, untenable.

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800

|   |   |
|---|---|
| 1 | CERTIFICATE OF SERVICE |

I hereby certify that on November 15, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

*/s/ Rachel McDowell*
RACHEL MCDOWELL
Legal Assistant
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3800
Fax: (253) 428-3826
E-mail: Rachel.McDowell@usdoj.gov

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM/
KUKHAHN (CR10-5221BHS) - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 450
TACOMA, WASHINGTON 98402
(253) 428-3800